IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    No. 3:11-cr-00494-HZ-1

               Plaintiff,                    OPINION & ORDER

    v.

FULGENCIO ARIAS, JR.,

               Defendant.

Natalie K. Wight
United States Attorney, District of Oregon
Kelly A. Zusman
First Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204

       Attorneys for Plaintiff


Margaret Huntington
O'Connor Weber, LLC
1500 SW 1st Ave., Suite 1090
Portland, OR 97201

       Attorney for Defendant

HERNÁNDEZ, District Judge:

Fulgencio Arias Jr. moves for a reduction of his sentence of incarceration to time served for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government opposes Defendant's motion. This matter is suitable for decision without oral argument. For the following reasons, the Court denies Defendant's motion.

## BACKGROUND

On May 6, 2016, Defendant was convicted of (1) conspiracy to distribute and possess with the intent to distribute methamphetamine, specifically a mixture or substance containing a detectable amount of methamphetamine weighing 500 grams or more; (2) conspiracy to commit money laundering; (3) attempted distribution of methamphetamine, specifically a mixture or substance containing a detectable amount of methamphetamine weighing 500 grams or more; and (4) distribution of methamphetamine, specifically a mixture or substance containing a detectable amount of methamphetamine weighing 500 grams or more. Verdict, ECF 448. The Court sentenced Defendant to a 300-month term of imprisonment and ten years of supervised release. Am. J. & Commitment, ECF 518. At the time the present motion was filed, Defendant's projected release date was October 16, 2033. Def. Supp. Mem. 3, ECF 639. Defendant is currently serving his sentence at FCI Yazoo City. *Id.* at 2.

## STANDARDS

A federal district court generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception, commonly known as compassionate release, to reduce a defendant's sentence for "extraordinary and compelling reasons." Under the original statute, only the Director of the Bureau of Prisons ("BOP") could

file a § 3582(c)(1)(A) motion for a sentence reduction on a defendant's behalf. *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021). But with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5191 (2018), Congress amended § 3582(c)(1)(A) to allow a defendant, after first requesting that the BOP move for a reduction on his or her behalf, to directly move the district court for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A).

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)  Extraordinary and compelling reasons warrant such a reduction; [ . . . ]
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission's policy statement identifies categories of extraordinary and compelling reasons, including the defendant's age, medical condition, and "family circumstances." U.S.S.G. § 1B1.13 app. n.1(A)-(C). The Sentencing Commission's policy statement, however, only applies to § 3582(c)(1)(A) motions filed by the BOP Director on behalf of a defendant. *Aruda*, 993 F.3d at 801. On a defendant's direct motion for compassionate release, the policy factors "may inform a district court's discretion . . ., but they are not binding." *Id.* at 802 (citation omitted). As a result, the court may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.* This is broad in scope. The Supreme Court recently held that a district court may consider intervening changes of law or fact. *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). The Ninth Circuit subsequently held that a district court may consider non-retroactive changes to penalty provisions. *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022). Where a defendant advances several bases in

support of a motion for compassionate release, the district court should consider whether those

reasons combined rise to the level of extraordinary and compelling even if no circumstance alone

justifies compassionate release. *See id.* at 1101.

## DISCUSSION

Defendant's motion is ripe for review. Defendant asserts that on July 30, 2022, he

requested release from the warden and received no response. Def. Mot. 3, ECF 624. The

Government accepts that Defendant thereby exhausted his administrative remedies. Gov. Resp.

2, ECF 629. But Defendant has not shown extraordinary and compelling circumstances, and

reducing his sentence would not be consistent with the statutory sentencing factors.

## I.    Extraordinary and Compelling Circumstances

Defendant provides several bases for his motion. He challenges the length of his sentence

as a violation of his Sixth Amendment rights. Def. Mem. 4-8, 21-23, ECF 624-1. Defendant also

challenges evidence presented at trial and his treatment while incarcerated as violations of his

constitutional rights. *Id.* at 23-26. Next, Defendant argues that his state of health and conditions

of confinement put him at risk of serious consequences from COVID-19. *Id.* at 30-35; Def. Supp.

Mem. 7-23. Finally, Defendant argues that he has rehabilitated and is not a danger to the

community. Def. Mem. 17-21. The Court considers each argument in turn and assesses whether

these reasons, individually or cumulatively, are extraordinary and compelling.

### A.    Constitutional Arguments

Defendant's motion challenges the length of his sentence on constitutional grounds.

Defendant argues that his sentence is substantively unreasonable. Def. Traverse Motion in

Rebuttal ("Def. Reply") 7-8, ECF 633. He also argues that he was effectively penalized for going

to trial. Def. Mem. 21-23. Finally, he argues that his base offense level was improperly

increased. *Id.* at 4-5, 27. All of these arguments lack merit.

The Court first addresses Defendant's assertion that his sentence is substantively

unreasonable. This argument should have been raised on appeal. *See Gall v. United States*, 552

U.S. 38, 46 (2007). Nevertheless, the Court will briefly consider it. Sentences are subject to

review for procedural and substantive reasonableness. *Id.* at 51. Substantive reasonableness

review considers the totality of the circumstances. *Id.* The Court's duty at sentencing is to

consider the sentencing factors and make an individualized determination of the appropriate

sentence for the defendant. 18 U.S.C. § 3553(a); *United States v. Simpson*, 572 F. App'x 523,

524 (9th Cir. 2014). The Court considered the statutory factors at Defendant's sentencing

hearing. Sentencing Hearing Tr. 69-71, ECF 554. Defendant faced a ten-year statutory minimum

sentence, with a maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii). His base offense

level was 36. Tr. 52:9-13. With enhancements, Defendant's offense level was 46, adjusted to 43.

*Id.* at 53:25-54:2. His criminal history category is III. *Id.* at 54:2. The guidelines recommended a

life sentence. *Id.* at 54:4-5. The Court sentenced Defendant to 300 months, well below the

guidelines' recommendation. The sentence is also below the average sentence imposed on

defendants with the same final offense level and criminal history category, which is 360 months.

U.S. Sentencing Commission, Judiciary Sentencing INformation (JSIN), *available at*

https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed March 15, 2023) (data from the

Sentencing Commission for the fiscal years 2017 through 2021).[1] In imposing the sentence, the

---

[1] Defendant asks the Court to take judicial notice of Sentencing Commission data pursuant to
Federal Rule of Evidence 201(b)(2). Def. Mem. 14.

Court observed that Defendant was loved by his family but had engaged in dangerous conduct.

Tr. 71:5-7. The sentence is substantively reasonable considering the totality of the circumstances.

Defendant argues that his sentence is a trial penalty because he could have received a

lower sentence if he had entered a guilty plea rather than going to trial. Def. Mem. 22. The Sixth

Amendment guarantees criminal defendants the right to a jury trial. *Ramos v. Louisiana*, 140 S.

Ct. 1390, 1394 (2020). On the other hand, "[t]here is no constitutional right to a plea bargain, and

the decision whether to offer a plea bargain is a matter of prosecutorial discretion." *United States*

*v. Moody*, 778 F.2d 1380, 1385-86 (9th Cir. 1985), *amended*, 791 F.2d 707 (9th Cir. 1986). *See*

*also* Fed. R. Crim. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or

the defendant when proceeding pro se, *may* discuss and reach a plea agreement.") (emphasis

added).

Defendant chose to assert his innocence and exercise his right to a jury trial. Defendant

states that he rejected the proffered plea deal because it required him to admit allegations that he

believed to be untrue. Def. Reply 9. Defendant had the right to reject the plea offer and proceed

to trial. He did not have the right to receive a plea offer. Defendant provides no evidence that he

was improperly pressured or threatened during plea negotiations. He chose to go to trial and was

convicted. He was sentenced based on his conviction and his other relevant characteristics,

receiving a sentence that was lower than the recommended range and lower than average for

similar defendants. There is no injustice for 18 U.S.C. § 3582(c)(1)(A) to remedy.

Next, Defendant asserts that his sentence is excessive because the Court made factual

findings that improperly increased his base offense level. Defendant points out that while the

jury found him guilty of offenses related to 500 grams of more of a substance containing a

detectable amount of methamphetamine, the Court at sentencing held him responsible for at least

1.5 kilograms of actual methamphetamine. Def. Mem. 4, 27. He argues that this violated his Sixth Amendment right to a jury trial under *Alleyne v. United States*, 570 U.S. 99 (2013). *Id.* at 5.

A fact constituting an element of the charged offense must be found by a jury beyond a reasonable doubt. *Alleyne*, 570 U.S. at 107. "[A] fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed." *Id.* at 107-08. The jury must find any facts that increase the mandatory minimum sentence and facts other than a prior conviction that increase the penalty beyond the prescribed statutory maximum. *Id.* at 108; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). However, the district court may find facts bearing on sentencing that do not increase the statutory minimum or maximum sentence, as long as they do not contradict the jury's factual findings. *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1142-43 (9th Cir. 2016).

The Court heard and rejected Defendant's arguments on this issue at his sentencing hearing. Tr. 49:10-50:14. While Defendant asserts that the base offense level is 30, Def. Mem. 4, the Court found it to be 36, Tr. 52:9-13. The Court properly found the quantity of drugs and held Defendant responsible for pure methamphetamine.

With respect to drug quantity, the jury convicted Defendant of offenses involving a mixture of a substance containing a detectable amount of methamphetamine in the amount of 500 grams or more. The jury did not set an upper limit on quantity. The relevant quantity in determining the statutory minimum and maximum sentences for offenses involving a mixture of a substance containing a detectable amount of methamphetamine is 500 grams. 21 U.S.C. § 841(b)(1)(A)(viii). The findings at Defendant's sentencing did not contradict the verdict and did not affect the statutory sentencing range. There was no constitutional error. *See Pimentel-Lopez*, 859 F.3d at 1142-43; *United States v. Bass*, 562 F. App'x 579, 579 (9th Cir. 2014).

With respect to drug purity, the jury found that Defendant possessed a substance containing a detectable amount of methamphetamine, so the Court was free to find that the substance itself was methamphetamine, as this did not contradict the verdict and the statutory sentencing range was not affected. 21 U.S.C. § 841(b)(1)(A)(viii). Defendant's increased base offense level was a function of the sentencing guidelines. Under the sentencing guidelines, actual methamphetamine is weighed ten times more heavily than methamphetamine mixture. *United States v. Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *2 (S.D. Miss. Dec. 23, 2022). According to the guidelines, "'the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.'" *Id.* at *1 (quoting U.S.S.G. § 2D1.1 cmt. n.27(C)).

Defendant points to several district court decisions rejecting the Sentencing Commission's use of drug purity as a proxy for the defendant's culpability, at least in the context of methamphetamine. Def. Supp. Mem. 2 n.1. In *Robinson*, the defendant provided data from the Drug Enforcement Administration showing that the average purity of methamphetamine was over 95% between 2014 and 2019. 2022 WL 17904534, at *2. The district court noted that in a recent case, "the United States conceded that there is no empirical basis for the Sentencing Commission's 10-to-1 weight disparity between actual methamphetamine and methamphetamine mixture," and that other district courts had concluded there was no empirical basis for the disparity. *Id.* at *3. Agreeing with these cases, the district court in *Robinson* set a lower base offense level for the defendant. *Id.* at *4.[2]

---

[2] District courts expressing disagreement with the drug purity disparity have taken different approaches in expressing that disagreement. *United States v. Carrillo*, 440 F. Supp. 3d 1148, 1151-53 (E.D. Cal. 2020) (reviewing approaches).

This argument may have merit in an appropriate case. It does not in this case. First, Defendant *was* a leader of the conspiracy and *was* close to the source of the drugs. Sentencing Hearing Tr. 53:5-20; Presentence Report ("PSR") ¶ 11, ECF 509. The disparity served the purpose it was designed to serve. Second, reducing Defendant's base offense level would not materially affect the analysis here. Even if the Court agreed that Defendant's base offense level should be 30 rather than 36, his final offense level would be 40: enhancements raised Defendant's offense level from 36 to 46, so his offense level would be raised from 30 to 40. *See* Tr. 52-54; Def. Mem. 14. For a final offense level of 40 and a criminal history category of III, the recommended sentence is 360 months to life. U.S.S.G. Ch. 5, Pt. A (Sentencing Table). Defendant's sentence of 300 months is well below the lower end of the range. A further reduction is not warranted.

Defendant also challenges various aspects of the conduct of his trial. Def. Mem. 23-26. He argues that he was unfairly prejudiced because the jury was told of his prior gang affiliation, but acknowledges that the Ninth Circuit did not agree. Def. Mem. 24; Mem., ECF 590-1. The Supreme Court denied review. ECF 592. Defendant challenges the testimony of a government informant, and based on that challenge argues that he should not have received a firearm enhancement. Def. Mem. 25. Defendant could have raised these issues on appeal, and to the extent they are relevant here, he fails to establish that he did not receive a fair trial.

Finally, Defendant moves to reduce his sentence based on alleged cruel and unusual punishment in violation of the Eighth Amendment. He asserts that as a form of retaliation, he was isolated in his cell and his movements and communications were limited. *Id.* at 26. Defendant provides no evidence to support his allegations, and they appear to be at odds with

evidence that he has taken many classes while incarcerated and was cleared for food service. *E.g.*, Def. Supp. Mem. Ex. 2 at 2.

District courts that have granted a sentence reduction based on the length of the sentence have found either an intervening change in the law or an injustice during the original proceedings. *E.g.*, *United States v. Lii*, 528 F. Supp. 3d 1153, 1161, 1165 (D. Haw. 2021) (defendant sentenced to life in prison for relatively minor methamphetamine-related offenses in 2006 would not have been sentenced to life in prison if sentenced after the First Step Act became law); *United States v. Kanohokula*, 572 F. Supp. 3d 895, 902 (D. Haw. 2021) (defendant convicted of drug offenses would not be deemed a "career offender" under the guidelines if sentenced in 2021); *United States v. Haynes*, 456 F. Supp. 3d 496, 497, 514 (E.D.N.Y. 2020) (sentence included 40 years from counts that were "stacked" under law current at the time of sentencing); *United States v. Conley*, No. 11 CR 0779-6, 2021 WL 825669, at *4 (N.D. Ill. Mar. 4, 2021) (defendant was an impoverished racial minority who was enticed into fake drug operations as part of a former federal government practice and played a minor role in the operations).

Here there has been no intervening change in the law relevant to Defendant's case, and Defendant's trial and sentencing were fair.[3] Defendant's constitutional arguments lack merit. The length of Defendant's sentence is not an extraordinary and compelling reason to reduce his sentence. The Court proceeds to consider Defendant's health conditions and conditions of confinement.

---

[3] Defendant's reliance on changes in Oregon law legalizing drugs, Def. Mem. 26, is misplaced because state law on controlled substances does not determine federal law. Similarly, Defendant's comparison of his sentence to a possible sentence in state proceedings in Oregon, *id.* at 15, has no bearing because state proceedings are governed by different law.

B.    Health Conditions and Conditions of Confinement

Defendant argues that his health conditions are an extraordinary and compelling circumstance in the context of the COVID-19 pandemic, and that BOP has not given him the medical care he needs. Def. Mot. 29-35; Def. Supp. Mem. 7-23. Defendant is 49 years old. Def. Supp. Mem. 2. He has asthma, lung damage, high blood pressure, and obesity. *Id.* Defendant contracted COVID-19 in January 2022. *Id.* at 13. He had a fever and lost his sense of smell. *Id.* at 6-7. He did not report more serious symptoms. He received the original course of the vaccine but did not receive a booster. *Id.* at 7.

Defendant has suffered from asthma since around 2016. Def. Supp. Mem. Ex. 7 at 24, ECF 640. He was prescribed an inhaler in 2017. *Id.* at 102. Defendant's requests for medical care suggest that the inhaler was not always made available to him. *E.g.*, *id.* at 47 (Defendant alleged in June 2020 that the Marshals threw his inhaler in the trash); Ex. 11 at 1, ECF 641 (Defendant alleged in September 2017 that his inhaler was thrown in the trash); Ex. 11 at 3 (Defendant requested his inhaler in June 2018). Defendant asserts that he was never provided with an inhaler, Def. Supp. Mem. 4, but his requests for the inhaler show that he did receive it but that there were instances when it was taken away from him or he needed a replacement and it was not provided promptly. Defendant's lung was damaged after he was shot with BBs in 1998, and there are still fragments at the left lung base. Ex. 7 at 44, 48, 282. However, imaging of his lungs showed no impact on his cardiopulmonary function. *Id.* at 44, 282.

The federal government's understanding of risk factors for COVID-19 has evolved over the course of the pandemic. The Centers for Disease Control ("CDC") has concluded that age is the strongest demographic risk factor. "Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals,"

https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Feb. 9, 2023). In general, risk of serious outcomes is higher for those age 50 and above. *Id.* Asthma and obesity are also conclusively shown to increase the risk of at least one severe outcome from COVID-19. *Id.* The evidence is mixed with respect to hypertension. *Id.* At least two of Defendant's conditions are thus linked to an increased risk of serious complications from COVID-19. His age is on the cusp of pointing to a higher risk of complications.

Defendant points to evidence that Yazoo City has struggled to cope with the pandemic. Def. Supp. Mem. 6, 19. There was an outbreak of COVID-19 in January 2022. *Id.* at 6. Most inmates have been on lockdown during the majority of the pandemic. *Id.* Currently, however, Yazoo City facilities are on Level 1 operations. *Id.* at 7.

The Court concludes that Defendant's health conditions do not on their own constitute an extraordinary and compelling circumstance. While his conditions do point to increased risk of complications from COVID-19, the record also shows that he contracted the virus and did not suffer any such side effects.[4] And while there was an outbreak at Yazoo City over a year ago, the facility has since returned to Level 1 operations. Further, understanding of the risk factors for COVID-19 and how to respond to the pandemic has improved since 2020. The Court expects that, as the Government asserts, BOP will provide Defendant with appropriate treatment for his medical conditions. The Court next turns to Defendant's evidence of rehabilitation.

C.    Rehabilitation

Rehabilitation may be considered an extraordinary and compelling reason in support of other reasons. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant *alone* shall not be considered

---

[4] Another court in this district observed that courts around the country are split on whether to grant compassionate release based on asthma. *United States v. Khatkar*, No. 3:19-CR-303-SI-02, 2021 WL 102183, at *3 (D. Or. Jan. 12, 2021).

an extraordinary and compelling reason.") (emphasis added). Defendant argues that he has rehabilitated through education, employment, religious study, and ongoing ties with family. Def. Mem. 17-21. The Government agrees that Defendant has taken many classes, but points to a less than perfect disciplinary record, including sanctions for possessing a dangerous tool in October 2020 and a dangerous weapon in June 2018. Gov. Resp. 4.

Defendant has shown some evidence of rehabilitation. He has taken many classes. Def. Supp. Mem. Ex. 2 at 2, 4-5. He has taken drug education. Ex. 2 at 2. The Court also recognizes, as it did at sentencing, that Defendant's family supports him and wishes for him to rejoin them. Ex. 3 (letters from Defendant's family); Tr. 68:13-18. His family has offered him a home and a job if he is released. Proposed Release Plan, ECF 626.

The Government is correct that Defendant's disciplinary record is not stellar. Defendant was sanctioned for possessing a hazardous tool in October 2020 and April 2020. Def. Supp. Mem. Ex. 9 at 1. He was sanctioned for possessing a dangerous weapon in July 2018. *Id.* Defendant also has older incidents from 2013 (communicating gang affiliation), 2005 (fighting), 2004 (being in an unauthorized area), 2003 (being absent from assignment), and 2001 (being insolent to a staff member). *Id.* at 2-3. The older incidents weigh less heavily, but the overall record shows that Defendant has had disciplinary issues during both of his terms of incarceration. In April 2021, Defendant's risk level was assessed as medium. Ex. 10 at 1. In May 2022, it was assessed as low. Ex. 2 at 8. Thus, Defendant has shown recent improvement.

Defendant states that the "dangerous weapon" he possessed was a hard piece of plastic. Def. Supp. Mem. 5. The "hazardous tool" he possessed was a cellphone. *Id.* While neither of these objects appears to be as dangerous as the labels suggest, the Court cannot ignore that Defendant has not always followed the rules in prison.

The Court also notes that Defendant's acceptance of responsibility is mixed. Defendant points to his words at sentencing, where he said he had changed his thinking and would not commit further criminal acts. Def. Mem. 18-19. However, he also argues that he was a "scapegoat" who was falsely accused by a co-conspirator. *Id.* at 25. The Ninth Circuit stated that "[t]he government's case against Arias was built not only on the testimony of Arias' two principal co-conspirators, Fregoso and Casas, but also on recorded phone conversations in which Arias described his methamphetamine and money laundering crimes in his own words." Mem. 4, ECF 590-1. Defendant's inconsistent position on his own level of responsibility does not strengthen his case for rehabilitation. Overall, Defendant has made progress in rehabilitating himself, and the Court commends him for that, but the evidence of rehabilitation is not significant enough to justify a finding of extraordinary and compelling circumstances.

In sum, Defendant's constitutional challenges to the length of his sentence, the conduct of his trial, and his conditions of incarceration lack merit. Defendant's health conditions and conditions of confinement, combined with rehabilitation, do not constitute extraordinary and compelling reasons to reduce his sentence.

## II.    Sentencing Factors

The sentencing factors point against a reduced sentence. The Court must consider whether reducing Defendant's sentence would be consistent with the sentencing factors outlined at 18 U.S.C. § 3553. The first, second, third, fourth, and sixth factors are relevant here.[5] These factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, among other things, "reflect the

---

[5] No policy statement applies here, so the fifth sentencing factor does not apply. The Court considered Defendant's arguments relating to the policy statement in evaluating the other sentencing factors.

seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(4), (6).

The first factor weighs against a reduced sentence. Defendant was convicted of four counts relating to possession and distribution of methamphetamines as part of a conspiracy. The base offense level was 36. Sentencing Hearing Tr. 52:9-10. Defendant possessed a firearm while committing the offense. *Id.* at 52:14-22. The conspiracy was importing methamphetamine from Mexico. *Id.* at 53:5-7. Defendant was the leader of the conspiracy. *Id.* at 53:8-20. He obstructed justice. *Id.* at 53:21-24. These factors led to an adjusted offense level of 46. *Id.* at 53:25. Defendant's conduct is serious. Further, Defendant falls in criminal history category III. *Id.* at 54:2-4. He has a conviction for driving under the influence from 2000. PSR ¶ 74. He was convicted for violating RICO in 2000. *Id.* ¶ 75. The Court acknowledges the evidence of rehabilitation, as discussed above, but it does not outweigh the other evidence in the record.

The second factor weighs against a reduced sentence. Defendant's conduct was serious, and his criminal history and mixed disciplinary record indicate that he may still present a danger to the public. The Court acknowledges Defendant's argument to the contrary, Def. Supp. Mem. 24-27, but he has failed to establish that he does not pose a danger to the community. Defendant's acceptance of responsibility is also inconsistent.

The third and fourth factors weigh against a reduced sentence. Defendant's offense level was 46, adjusted to 43 because that is the highest level available on the sentencing chart. Sentencing Hearing Tr. 54:1-2. With an offense level of 43 and a criminal history category of III, the guidelines recommended a life sentence. *Id.* at 54:4-5. The Court sentenced Defendant to 300 months, far less than what the guidelines recommended. No intervening changes in the law lead to a different result.

The sixth factor weighs against a reduced sentence. Data from the Sentencing Commission for the fiscal years 2017 through 2021 show that defendants with a final offense level of 43 and criminal history category of III received an average sentence of 360 months. U.S. Sentencing Commission, Judiciary Sentencing INformation (JSIN), *available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard. Defendant received a sentence of 300 months, which is already below average. A further reduction would increase the disparity.

Defendant argues that his sentence is "longer than usual" for individuals convicted of methamphetamine offenses. Def. Reply 7. Data show that the average sentence for methamphetamine tracking offenses was 88 months in fiscal year 2017. U.S. Sentencing Commission, "Quick Facts: Methamphetamine Tracking Offenses," https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Methamphetamine_FY17.pdf. These data also show that over 40% of offenders had little to no criminal history, and that sentences were reduced for many offenders because they were minor participants and met safety valve criteria. *Id.* In contrast, Defendant had a criminal history level of III and was the leader of the conspiracy. Further, unlike many other defendants, he did not provide substantial assistance and was not eligible for a downward departure on that basis.

*See id.* Under a quarter of defendants received a non-government-sponsored below-range sentence. *Id.* Defendant received more lenience than many similarly situated individuals.

Defendant argues that the effect of the pandemic is "[t]he overriding factor" that has increased the severity of his sentence beyond what was anticipated. Def. Supp. Mem. 23-24. The pandemic has affected the entire nation. Under Defendant's reasoning, all inmates should receive a reduced sentence because of the pandemic. But the law requires the Court to conduct an individualized analysis of Defendant's characteristics and circumstances. The Court considered the effect of the pandemic on Defendant's conditions of confinement when determining whether he had shown extraordinary and compelling circumstances. The Court recognized Defendant's medical conditions and relevant risk factors for complications from COVID-19. The pandemic is not an independent reason to reduce his sentence.

In sum, reducing Defendant's sentence would not be consistent with the sentencing factors. Defendant has not shown that his sentence should be reduced under 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

The Court DENIES Defendant's Motion for Sentence Reduction [624].

IT IS SO ORDERED.


DATED:＿＿March 29, 2023＿＿＿＿.


MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER